UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * *

REPORT AND RECOMMENDATION

* * * * * * * * * * * * * * * * * *

Boulay Auto Glass, Inc.,

        Plaintiff,

vs.

Illinois Farmers Insurance
Company, and Mid-Century
Insurance Company,

        Defendants.        Civ. No. 10-798 (PJS/RLE)

* * * * * * * * * * * * * * * * * *

## I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a special assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the Motion of the Plaintiff Boulay Auto Glass, Inc. ("Boulay"), to Consolidate Invoices for Arbitration. A Hearing was held on April 27, 2010, at which time, Boulay appeared by Charles J. Lloyd, and Rachael J. Abrahamson, Esqs., and the Defendants Illinois Farmers Insurance Company, and Mid-Century Insurance Company (collectively, "Farmers"), appeared by John J.

Brogan, and Steven R. Klutz, Esqs. For reasons which follow, we recommend that the Motion be denied without prejudice.

## II. Factual and Procedural Background.

Boulay commenced this action in Minnesota State Court on February 18, 2010, and Farmers removed the action to this Court on March 15, 2010. See, Notice of Removal, Docket No. 1. The action arises from a dispute as to the amounts paid by Farmers to Boulay for replacement auto-glass, and repairs to auto-glass, in vehicles owned by individuals who held insurance policies with Farmers (the "insureds"). See, Complaint, Docket No. 1-1, at pp. 4-5 of 10. Boulay contends that Farmers has underpaid on approximately 615 invoices, and has failed to pay on 31 invoices,[1] see, Boulay's Memorandum in Support ("Boulay Memo"), Docket No. 8, at p. 5 of 13; Declaration of John Boulay ("J. Boulay Decl."), Exhibit F, Docket No. 10-3, totaling a deficit of $323,467.88. See, Complaint, supra at p. 5 of 10; Boulay Memo, supra at p. 10 of 13.

---

[1] Boulay contends that there are a total of 627 disputed invoices, which differs from this itemization of underpaid and unpaid claims. In the interest of consistency with the parties' arguments, we use the 627 figure as the total, and the 31 figure for the unpaid invoices separately.

The parties do not dispute that, as a general matter, the claims must be resolved in binding arbitration, id. at p. 6 of 10; Answer, Docket No. 5, at p. 4 of 11, as to the question of whether Boulay's pricing for auto-glass work is reasonable for the marketplace. See, Boulay Memo, supra at p. 4 of 13. However, the parties dispute the form of the arbitration. As a consequence, the Complaint seeks a Declaratory Judgment that the necessary predicates to consolidation of the 627 contested invoices have been met, and that "the parties are required to arbitrate this dispute in accordance with the Minnesota No-Fault Act, on a consolidated basis in one hearing," and that future invoices must be included in that consolidated arbitration as well. See, Complaint, supra at pp. 9-10 of 10.

Accordingly, the Motion to Consolidate that is now before us, which also seeks an Order that the 627 invoices be consolidated for purposes of arbitration, essentially seeks all of the relief that is requested in Boulay's Complaint. Therefore, while the Motion, and the Complaint, do not explicitly seek to compel arbitration, since a resolution of this action will result in the proceeding moving directly into arbitration, and given the representation of counsel for Boulay, at the Hearing, that the Motion was intended as such, we take a functional view of the Motion as requesting an Order that compels a single arbitration.

As to the merits of the Motion, Boulay contends that, although the amount owed on each invoice is unique, the formula by which Boulay arrives at that amount is the same for each invoice. In support of the contention, Boulay has submitted the Declaration of John Boulay ("J. Boulay"). See, <u>Boulay Decl.</u>, supra. In his Declaration, J. Boulay avers that Boulay starts with the price listed in the National Automobile Glass Specifications ("NAGS") publication, for the price of the glass, and then applies a percentage to that listed price. <u>Id.</u> at p. 3¶8 and p. 5¶17. J. Boulay avers that the percentage of the NAGS price that it uses is consistent, but "subject to periodic adjustment," that is related to the time period, regardless of the type of glass used. <u>Id.</u> J. Boulay also avers that the price of adhesive is then added, typically at a flat rate, <u>id.</u> at p. 4¶15, then the cost of labor is included, either at a flat installation rate, or at the NAGS hourly labor rate, <u>id.</u> at p. 4¶12, and then the cost of moldings, clips, and other materials, is included. <u>Id.</u> at p. 5¶16. According to J. Boulay, "[f]rom time to time," Boulay employs an automobile dealer list price, rather than NAGS. <u>Id.</u> at p. 4¶10.

Boulay argues that, upon replacing the auto-glass for an insured, it receives a valid assignment of the insurance proceeds from that insured, and then sends an invoice to Farmers, based upon the calculations under the formula we have detailed.

- 4 -

See, Boulay Memo, supra at pp. 4-5 of 13.[2] Farmers then completes its own calculations, using a different percentage of the NAGS listed price, and issues payment based upon its own results, which is usually for less than the invoice amount, thereby constituting a "shortpay." Id. at p. 5 of 13.

In its Memorandum in Opposition, Farmers argues that the Motion is premature, because it is dispositive, and because Farmers requires discovery on the 627 invoices, in order to raise coverage issues that must be decided by the Court, in pre-arbitration Motions for Summary Judgment. See, Farmers' Memorandum in Opposition ("Farmers Memo"), Docket No. 12, at pp. 2 and 11-12 of 14. Farmers also argues that limited discovery should be directed toward those invoices because there are "at least six significant factual differences among the various claims," and because the invoices should likely be separated into different arbitrations based upon those factual differences. Id. at pp. 1 and 9-11 of 14. Additionally, Farmers argues that the Courts must decide certain legal and factual issues, such as the validity of the

---

[2] Boulay has submitted several sample invoices, which contain language that "[t]he glass listed has been replaced / repaired with like kind and quality to my entire satisfaction, and I authorize my Insurance Company to pay BOULAY AUTO GLASS, INC. directly for the glass and installation charges, or repairs." See, Declaration of John Boulay ("J. Boulay Decl."), Exhibits C-E, Docket No. 10-2. The sample invoices are not signed.

assignments by the insureds to Boulay, as well as the meaning of certain endorsements in the policies, and that the Court should resolve those issues before arbitration begins.

### III. Discussion

In relevant part, the Minnesota No-Fault Act provides that, with the exception of health benefits claims, Courts "shall * * * provide for the mandatory submission to binding arbitration of all cases at issue where the [insurance] claim * * * is in an amount of $10,000 or less * * *." Minnesota Statutes Section 65B.525, Subdivision 1. "The Act includes auto glass coverage under the umbrella of 'comprehensive coverage.'" Illinois Farmers Insurance Co. v. Glass Service Co., 683 N.W2d 792, 798 (Minn. 2004), citing Minnesota Statutes Section 65B.134. Indeed, the Minnesota Legislature enacted the arbitration provision of the No-Fault Act, in part, in order that "auto glass vendors [would] be able to arbitrate their shortpay claims against insurers." Star Windshield Repair, Inc. v. Western National Ins. Co., 768 N.W.2d 346, 350 (Minn. 2009).

As the Court recently explained, in Buyrite Auto Glass, Inc. v. Illinois Farmers Ins. Co., 2010 WL 145277 at *1 (D. Minn., January 8, 2010):

> Under the [No Fault] Act, each shortpay claim of $10,000 or less is, individually, subject to mandatory, binding arbitration. Minn. Stat. § 65B.525, subd. 1. When an auto-

> glass vendor * * * has been assigned multiple shortpay claims, the shortpay claims cannot be aggregated to exceed $10,000 to avoid mandatory arbitration. See Ill. Farmers [Ins. Co. v. Glass Serv. Co.], 683 N.W.2d [792], 804 [(Minn. 2004)]. The Minnesota Supreme Court has held, however, that district courts have discretion to order consolidation of multiple shortpay claims for purposes of arbitration under the Act. Id. at 805-07. In exercising that discretion, a district court should consider "the efficiencies of consolidation, the danger of inconsistent judgments if disputes are arbitrated separately, and the prejudice that parties may suffer as a result of consolidation." Id. at 806-07.

[Footnote omitted].

As a result, the Court may direct that disputed auto-glass invoices be consolidated and heard in a single, or in multiple arbitrations. See, Illinois Farmers Insurance Co. v. Glass Service Co., supra at 807.

However, in cases such as this one, the Minnesota Courts, which have construed the Minnesota No-Fault Act, have held that arbitrators can only decide issues of fact, and where arbitrators decide issues of law, their decisions are subject to de novo review by the Courts. See, Gilder v. Auto-Owners Ins. Co., 659 N.W.2d 804, 807 (Minn.App. 2003)("[W]hen called upon to grant relief, an arbitrator need not refrain from deciding a question simply because it is a legal question," but his ruling is subject to de novo review); Weaver v. State Farm Ins. Co., 609 N.W.2d 878, 882

(Minn. 2000)(holding that arbitrators are not prevented from applying the law to the facts, but that the determinations would be subject to <u>de</u> <u>novo</u> review); <u>Johnson v. American Family Mutual Ins. Co.</u>, 426 N.W.2d 419 (Minn. 1988). In addition, certain factual issues, such as preconditions to coverage, must ultimately be decided by the Court. See, <u>Costello v. Aetna Cas. & Sur. Co.</u>, 472 N.W.2d 324, 326 (Minn. 1991); <u>AMCO Ins. Co. v. Ashwood-Ames</u>, 534 N.W.2d 740, 741 (Minn.App. 1995)("[W]here insurance coverage turns on disputed facts, the factual dispute should be tried and resolved by the trial court.").

Here, in addition to the reasonableness of the amount charged by Boulay, the parties also dispute whether Boulay received valid assignments, from the insureds, of their right to the proceeds from Farmers, which Farmers argues is an issue for the Court to decide. Further, Farmers asserts that, during the time period relevant here, its insureds had the option of two (2) different auto-glass endorsements, the MN008 or the E1400, and that the language of the E1400 waiver was amended, such that three (3) different waiver endorsements could be involved. See, <u>Farmer's Memo</u>, supra at pp. 3-4 of 14; see also, <u>Declaration of Michael Keller and Exhibits, Docket Nos. 14 and 14-1 to 14-3</u> (discussing the policy endorsements). Farmers contends that Boulay will likely argue that the E1400 endorsement obligates Farmers to pay more than the

price that is "reasonable in the marketplace," which counsels consolidation grouped by the type of waiver endorsement, see, Farmer's Memo, supra at pp. 4-5 of 14, and which, ultimately, is a legal issue that the Court must decide.

Since Boulay has not actually made the predicted argument, that is related to the endorsements, we limit our discussion to the validity of the assignments, which Farmers raised in its Answer. See, Answer, supra at p. 9 of 11. In a case that was recently decided by the District Court, the Honorable Patrick J. Schiltz presiding, the Court extended the holding of the Minnesota Supreme Court in Costello v. Aetna Cas. & Sur. Co., supra at 326 -- that factual preconditions to coverage are for the Court to decide -- and concluded that the validity of an assignment of insurance proceeds, while not a precondition to coverage, is a precondition to the right to enforce arbitration, and therefore, should properly be decided by the Court, rather than the arbitrator. See, Alpine Glass, Inc. v. Illinois Farmers Ins. Co., --- F. Supp.2d ----, 2010 WL 760139 at *10-11 (D. Minn., February 26, 2010). In addition, the Court determined that, if the Court had been presented with the issue of the validity of the assignments earlier, it would have decided that issue, before compelling arbitration on the remaining fact questions. Id. at *11.

Of course, as the District Court recognized, "there is no per se requirement under Minnesota's No-Fault Act that courts resolve any legal issues before ordering arbitration," see, Alpine Glass, Inc. v. Illinois Farmers Insurance Co., 531 F.3d 679, 683 n. 4 (8th Cir. 2008), but Minnesota Courts have held that, where the Court is presented with an issue that it will ultimately be required to decide, and which necessarily impacts whether arbitration is appropriate at all -- such as a coverage issue -- the Court should resolve the issue before arbitration proceeds. See, Safeco Ins. Co. v. Goldenberg, 435 N.W.2d 616, 620 (Minn.App. 1989); United States Fidelity & Guaranty Co. v. Fruchtman, 263 N.W.2d 66, 71 (Minn. 1978)(if a fact issue with respect to coverage is presented before arbitration, the Court should decide it at that time); Costello v. Aetna Cas. & Surety Co., supra at 326 ("Where the coverage dispute arises on a motion to compel arbitration or to enjoin arbitration, the court ought to decide the issue in the first instance.").

Other Courts in our District have taken a different approach, and have left the validity of assignments of post-loss proceeds, in auto-glass claims, to the arbitrators, who would then make the first determination, which is subject to de novo review. See, Alpine Glass, Inc. v. American Family Insurance, 2007 WL 1152982 at *5 (D. Minn., March 12, 2007), adopted, 2007 WL 1152931 (D. Minn., April 18, 2007)

("[T]he magistrate judge correctly found that the fact issues regarding the existence and validity of each of the fourteen hundred assignments * * * are best arbitrated in the first instance, and will be subject to review by the courts following a ruling by the arbitrator."); see also, Buyrite Auto Glass, Inc. v. Illinois Farmers Ins. Co., supra at *2.

In support of that position, in Alpine Glass, Inc. v. American Family Insurance, supra at *5, citing Great West Cas. Co. v. State Farm Mut. Ins. Co., 590 N.W.2d 675, 677 n. 1 (Minn.App. 1999), the Court observed that the holding in Johnson v. American Family Mutual Ins. Co., supra, that issues of law should be decided by the Courts, had been further explained by the Minnesota Courts, such that "the distinction between legal and factual issues does not define the boundary between what is arbitrable and what is not[;] it defines the boundary between which issues decided by arbitrators are subject to de novo judicial review and which issues are conclusively decided by arbitrators." Finding the validity of the assignments to be intertwined with the merits of the claim to be arbitrated, the Court declined to address the assignment issue prior to arbitration. Id. at *5.

We are persuaded by the Court's reasoning, in Alpine Glass v. Illinois Farmers Ins. Co., supra at *10-11 (D. Minn., February 26, 2010), that the validity of the

assignments is best decided by the Court, before the dispute may be arbitrated. While we recognize that Costello did not address the precise issue, we are persuaded that its holding, and reasoning, are easily extendible into this realm. As the Minnesota Supreme Court recently held, the Minnesota Legislature intended that auto-glass vendors would be able to arbitrate their disputes with insurance companies under the No-Fault Act, such that insurance policy clauses that purported to invalidate post-loss assignments of the insureds' rights to payment were unenforceable. See, Star Windshield Repair, Inc. v. Western National Ins. Co., supra at 350. A valid assignment of the right to proceeds, then, is a necessary prerequisite to an auto-glass repair vendor's authority to arbitrate its claims under the No-Fault Act. See, Illinois Farmers Ins. Co. v. Glass Service Co., supra at 803 ("An assignment operates to place the assignee in the shoes of the assignor, and provides the assignee with the same legal rights as the assignor had before the assignment.").

Accordingly, as the Court found in Alpine Glass v. Illinois Farmers Ins. Co., supra at *11, we conclude that the issues surrounding the validity of the assignments are analogous to a factual precondition to coverage, such as whether an injury "was caused by an underinsured motor vehicle," Costello v. Aetna Cas. and Surety Co., supra at 326, whether the claimant was "an occupant" of the vehicle at the time of the

accident, see, Safeco Ins. Co v. Goldenberg, supra at 619, or whether the accident occurred at all. See, AMCO Ins. Co v. Ashwood-Ames, supra at 741-42. We find that to be particularly true where, as here, Farmers has made no payments on thirty-one (31) of the disputed invoices, for reasons which, at this early stage, have not been disclosed. Accordingly, we conclude that the Court must ultimately decide the issue of the validity of the assignments.

We also agree with the Court's observation, in Alpine Glass v. Illinois Farmers Ins. Co., supra at *11, that the validity of the assignments should be decided before the arbitration commences. Such an approach allows for streamlined and focused resolution of auto-glass insurance disputes for, if all auto-glass litigation proceeded in the fashion that Boulay advocates here, each case would begin as an action to compel consolidation, in the District Court, would then proceed to arbitration to determine issues of both fact and law, and then return to the District Court to determine issues of law, or those fact issues that must be decided by the Court, on a de novo review.

As numerous Courts have recognized, and as the Act itself provides, in enacting the No-Fault Act, the Minnesota Legislature sought to create a rapid and inexpensive process to resolve those disputes. See, Alpine Glass, Inc. v. Illinois Farmers Ins. Co.,

supra at *13, citing Minnesota Statutes §65B.42(4); Alpine Glass, Inc. v. American Family Insurance Co., supra at *5; Illinois Farmers Ins. Co. v. Glass Service Co., supra at 805-06; Weaver v. State Farm Ins. Cos., supra at 884.  In our judgment, to have an arbitrator decide, in the first instance, an issue that then must be reviewed de novo by the District Court, is contrary to the Legislature's purpose, and would be plainly inefficient.  See, Weaver v. State Farm Ins. Co., supra at 884 (finding when arbitrators are presented with legal issues, they may decide them, subject to de novo review, because "it makes little sense to require [the parties] to shuttle back and forth between the arbitrator making factual determinations and the court deciding legal questions.").[3]

Further, as the Court noted in Alpine, on a de novo review of the legal conclusions of an arbitrator, the Court is often faced with extreme difficulty -- if not

---

[3]We do not view our conclusion as being contradicted by the Minnesota Courts' holding, that arbitrators are permitted to decide issues of law, subject to de novo review.  We read the Courts' holding, that "when called upon to grant relief, an arbitrator need not refrain from deciding a question simply because it is a legal question," Gilder v. Auto-Owners Ins. Co., 659 N.W.2d 804, 807 (Minn. App. 2003), as promoting the practical approach that we take here.  Where an issue is before the Court, it is more efficient to resolve it before the action moves to arbitration.  See, e.g., Great West Cas. Co v. State Farm Mut. Auto. Ins. Co., 590 N.W.2d 675, 677 n. 1 (Minn.App. 1999)("[I]t is permissible for parties to seek a declaratory judgment on an issue of statutory interpretation before submitting the fact issues to arbitration.").

an impossibility -- in determining the basis for the arbitrator's reviewable decisions, particularly where the arbitrator and the Court disagree as to which decisions are reviewable, and which are only for the arbitrator to decide. See, <u>Alpine Glass v. Illinois Farmers Ins. Co.</u>, supra at *9. Such an impediment to review only complicates the proceedings in the District Court, and imparts further, and potentially protracted delay in the resolution of the dispute.

Moreover, whether, and to what degree, the individual invoices, here, can be consolidated for purposes of arbitration, will necessarily be informed by the Court's decision on the assignments, as that decision could alter the tenor of the dispute, and could also generate a better means to categorize the invoices, based upon the Court's conclusions. As a consequence, we find that it is now premature for the Court to determine whether consolidation would promote efficiency, reduce the risk of inconsistent Judgments, or would be prejudicial to either party. See, <u>Illinois Farmers Ins. Co. v. Glass Services Co.</u>, supra at 806-07.

Accordingly, since we find that the case presents issues which should be decided by the Court before the invoices can be arbitrated, and because the issues concerning the merits of consolidation are now premature, we recommend that the Motion to Consolidate Invoices be denied, but without prejudice.

NOW, THEREFORE, It is --

RECOMMENDED:

That the Plaintiff's Motion to Consolidate Invoices [Docket No. 6] be denied, but without prejudice.

Dated: June 28, 2010                              *s/Raymond L. Erickson*
                                                  Raymond L. Erickson
                                                  CHIEF U.S. MAGISTRATE JUDGE

**N O T I C E**

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than July 12, 2010**, a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete

transcript of that Hearing **by no later than July 12, 2010**, unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.